[Cite as *In re B.W.*, 2026-Ohio-1824.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of:                    :

B.W.,                                :                 No. 25AP-619
                                                 (C.P.C. No. 12JU-7835)
             Appellant.              :
                                                  (REGULAR CALENDAR)
                                     :

                                     :

D E C I S I O N

Rendered on May 19, 2026

**On brief:** *Koffel, Brininger, Nesbitt*, and *Bradley P. Koffel*;
*Giorgianni Law LLC*, and *Paul Giorgianni*, for appellant.
**Argued:** *Paul Giorgianni*.

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and
*Bendan M. Inscho*, for appellee State of Ohio. **Argued:**
*Bendan M. Inscho*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BOGGS, P.J.

{¶ 1} Appellant, B.W., appeals the decision and judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch denying his petition for postconviction relief having been found delinquent of one count of rape. For the following reasons, we affirm the trial court's judgment.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} This court has previously accounted for the underlying facts of this case as follows:

> B.W. and [S.K.], both 14 years old, were dating. On June 1,
> 2021, they were in the basement of B.W.'s house, when [S.K.]
> alleged she was raped by B.W. [S.K.] was taken to the hospital

by her parents later that day, where a forensic interview and medical examination was conducted.

Law enforcement was notified, and a search warrant was executed at B.W.'s house in the early morning hours of June 2, 2021. On August 12, 2021, law enforcement filed a complaint alleging B.W. was delinquent for committing the crime of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree. B.W. denied the allegations on August 27, 2021.

The trial court conducted a four-day adjudicatory hearing on September 6, September 26, October 31, and November 7, 2022. On December 19, 2022, the magistrate issued a decision finding B.W. delinquent. On January 3, 2023, B.W., represented by new counsel, filed an objection to the magistrate's decision, and amended the objection on February 24, 2023. The court overruled the objection on August 7, 2023.

On October 23, 2023, the magistrate conducted a dispositional hearing and issued a magistrate's decision on November 1, 2023, placing B.W. on a period of community control. B.W. filed an objection to the magistrate's decision on November 9, 2023, and the court held arguments on January 9, 2024. On February 27, 2024, the trial court overruled the objections and entered a final appealable order.

B.W. filed a notice of appeal on March 12, 2024. B.W.'s requests for a stay in both the trial court and this court were denied.

*In re B.W.*, 2025-Ohio-1148, ¶ 2-6 (10th Dist.).

{¶ 3} At trial, S.K. testified that

B.W. used force to have sex without her consent. The visit began consensually, but became forcible after B.W. demanded sex. According to her trial testimony, she repeatedly asked B.W. to stop, but he did not. The victim testified that B.W. choked her and slapped her in the face to compel her to have sex.

B.W. grabbed her throat harder and pulled down the victim's pants against her wishes. [S.K.] let B.W. know that she was not okay with his actions, but he did not stop. B.W. ignored [S.K.'s] clear protests and continued to engage in sexual activity.

*Id.* at ¶ 12-13.

{¶ 4}  On March 31, 2025, this court affirmed B.W.'s adjudication. B.W. had argued that the trial court's finding he violated R.C. 2907.02(A)(2) was against the manifest weight of the evidence, that the trial court erred in allowing the testimony of a nurse examiner regarding the results of S.K.'s examination being consistent with sexual abuse, and that the trial court abused its discretion by not later allowing B.W. to testify. This court, however, found that S.K.'s testimony established the elements of rape and was not against the manifest weight of the evidence. This court also rejected B.W.'s second assignment of error and found that the trial court did not abuse its discretion by admitting the expert testimony of the nurse examiner. This court similarly overruled B.W.'s third assignment of error, finding that the trial court did not err in not allowing B.W. to testify after the magistrate found him delinquent.

{¶ 5}  On March 24, 2025, B.W. filed a petition for postconviction relief with the trial court. In his petition, B.W. argued that he was deprived of the right to effective assistance of counsel. In an affidavit to the trial court, B.W. attested that his counsel at trial failed to advise B.W. to testify and failed to communicate the import of the pre-trial plea offer, specifically that gross sexual imposition ("GSI") is an expungable and sealable offense. B.W. submitted an affidavit as well as affidavits from his father and mother in support of his petition.

{¶ 6}  On July 8, 2025, the trial court issued a decision and judgment entry denying B.W.'s petition for postconviction relief without a hearing. The trial court found that B.W.'s counsel at trial did not fall below an objective level of reasonable representation and that the decision whether to have B.W. testify was a strategic trial decision. The trial court also rejected B.W.'s argument that he would have accepted a plea deal to plead guilty to gross sexual imposition had he known that it was an expungable and sealable offense. The trial court noted that the plea deal was contingent on B.W. taking a polygraph test. It stated, "[i]f B.W. passed, the charges would be dismissed. If B.W. failed, he would admit to a charge of GSI which is a felony of the fourth degree. There has been no evidence presented which indicates whether or not a polygraph was *ever* conducted. Without the polygraph, B.W. cannot show that the prosecutor would not have revoked the offer of a plea." (July 8, 2025 Decision at 11.)

{¶ 7}  B.W. now appeals the denial of his petition for postconviction relief.

## II. ASSIGNMENTS OF ERROR

{¶ 8} In his appeal to this court, B.W. argues the following assignments of error:

1. The Juvenile Court erred by denying postconviction relief without a hearing with regard to [B.W.]'s claim that he was deprived of his constitutional right to effective assistance of counsel at the adjudicatory hearing by counsel's failure to advise [B.W.] to testify.

2. The Juvenile Court erred by denying postconviction relief without a hearing with regard to [B.W.]'s claim that he was deprived of his constitutional right to effective assistance of counsel by counsel's failure to communicate the import of the pre-trial plea offer.

## III. ANALYSIS

{¶ 9} B.W. argues that the trial court erred in denying his petition for postconviction relief. R.C. 2953.21 governs the filing of postconviction petitions and affords a petitioner relief "if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution." (Internal quotations marks deleted and citations omitted.) *State v. Edwards*, 2019-Ohio-3905, ¶ 11 (10th Dist.); *State v. Lacking*, 2015-Ohio-1715, ¶ 10 (10th Dist.). A petition for postconviction relief is a collateral civil attack on the prior criminal judgment, not an appeal of the judgment or a venue to relitigate substantive issues raised in a direct appeal. *State v. Conway*, 2019-Ohio-2260, ¶ 12 (10th Dist.); *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). A petition for postconviction relief " 'is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record.' " *State v. Sidibeh*, 2013-Ohio-2309, ¶ 8 (10th Dist.), quoting *State v. Murphy*, 2000 Ohio App. LEXIS 6129, *5 (10th Dist. Dec. 26, 2000).

{¶ 10} A petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition. *Id.* at ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-113 (1980). "Before granting a hearing on a [postconviction] petition . . . the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the

proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." R.C. 2953.21(D).

{¶ 11} In *State v. Jackson*, the Supreme Court of Ohio held that

> [b]efore a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and *also* that the defense was prejudiced by counsel's ineffectiveness.

> Broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing. *See Rivera v. United States* (C.A. 9, 1963), 318 F.2d 606.

(Emphasis in original.)

{¶ 12} The trial court may deny the petitioner's postconviction petition without an evidentiary hearing "if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief." *Sidibeh* at ¶ 13 (10th Dist.), citing *State v. Calhoun*, 1999-Ohio-102, paragraph two of the syllabus. We review a trial court's decision to deny a postconviction relief petition without a hearing for an abuse of discretion. *State v. Hough*, 2021-Ohio-2852, ¶ 8 (10th Dist.). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## A. Effective assistance of counsel

{¶ 13} Both of B.W.'s assignments of error claim that he was denied effective assistance of counsel. To establish a claim of ineffective assistance of counsel, B.W. must demonstrate that counsel's performance was deficient, and that counsel's deficient performance prejudiced him. *State v. Jackson*, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), citing *Strickland* at 697.

{¶ 14} To demonstrate deficient performance, B.W. must prove that counsel's performance fell below an objective standard of reasonable representation. *Jackson* at ¶ 133. In other words, B.W. must show that his counsel made errors " 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *State v. Thompson*, 2019-Ohio-2525, ¶ 13 (10th Dist.), quoting *Strickland* at 687. B.W. must overcome the strong presumption that defense counsel's performance falls within a wide range of reasonable professional assistance. *State v. Conway*, 2006-Ohio-2815, ¶ 101, citing *Strickland* at 689.

{¶ 15} "To show prejudice, the appellant must establish that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *State v. Jones*, 2019-Ohio-2134, ¶ 50 (10th Dist.), citing *State v. Hale*, 2008-Ohio-3426, ¶ 204. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Montgomery*, 2016-Ohio-5487, ¶ 82, citing *Strickland* at 694.

**B. Assignment of Error No. 1**

{¶ 16} In his first assignment of error, B.W. argues that the trial court erred "by denying postconviction relief without a hearing with regard to [B.W.]'s claim that he was deprived of his constitutional right to effective assistance of counsel at the adjudicatory hearing by counsel's failure to advise [B.W.] to testify." (Appellant's Brief at 14.) In his petition for postconviction relief, B.W. argues that no competent defense attorney "fails to advise the client of the need to testify" and that "[i]nstead of advising [B.W.] to testify, [counsel] merely presented B.W. and his parents with options." (Mar. 24, 2025 Petition for postconviction relief at 7-8.) We do not agree that this rises to the level of ineffective assistance of counsel.

{¶ 17} While the ultimate decision of whether or not to exercise the right to testify lies with the client, the advising of whether or not to do so is a matter of trial strategy. *See State v. Kennard*, 2022-Ohio-2055, ¶ 32-33 (2d Dist.), citing *State v. Faulkner*, 1993 Ohio App. LEXIS 2175, *3 (2d Dist. Apr. 22, 1993) "Since the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion." *State v. Ryan*, 2006-Ohio-5120, ¶ 23 (6th Dist.). *See also State v. Patel*,

2009-Ohio-3184, ¶ 6 (9th Dist.) (counsel's advice to "not testify falls within the realm of trial tactics and does not support a claim of ineffective assistance of counsel," and defendant "did not aver . . . that he was unaware of his right to testify."); *State v. Hunt*, 2018-Ohio-1637, ¶ 20 (8th Dist.) ("this court has repeatedly held that the 'advice provided by a criminal defense lawyer to his or her client regarding the decision to testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance," ' unless it can be shown that the decision was the result of coercion. (Citations omitted.)," quoting *State v. Winchester*, 2002-Ohio-2130, ¶ 12 (8th Dist.).

{¶ 18} Here, B.W. does not argue that his counsel coerced him into not testifying or that he was unaware of his right to testify. Our examination of the trial transcript indicates that the trial court took a break to allow B.W. and his counsel to speak and consider whether or not he should testify, indicating that B.W. was in fact aware that he could testify. During oral argument to this court, B.W.'s appellate counsel stated that he was not arguing coercion, but rather that B.W.'s trial counsel was ineffective for not advising him to testify because the state's case rested on S.K.'s testimony, and B.W. needed to testify in order to counter it. We do not agree.

{¶ 19} To demonstrate his counsel's performance was deficient, B.W. must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. "[A]n unsuccessful strategy does not render counsel's assistance constitutionally ineffective." *State v. Hunt*, 2013-Ohio-5326, ¶ 117 (10th Dist.).

{¶ 20} In *United States v. Webber*, the Sixth Circuit Court of Appeals stated that "[t]he right to testify is personal to the defendant, [and] may be relinquished only by the defendant" and that "The defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." 208 F.3d 545, 550-551 (6th Cir. 2000). The court further stated that:

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. [*United States v.*] *Joelson*, 7 F.3d [174,] 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer* [*v. United States*], 1997 WL 12125[,] *2 [(6th Cir. 1997)]. When a defendant does

> not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

*Id.* at 551.

{¶ 21} Here there is no evidence of coercion or that B.W. was unaware he had the right to testify. Nothing in the record indicated that B.W. wanted to testify or was prevented by his counsel from testifying. Neither does B.W.'s affidavit in his petition for postconviction relief specify that he wanted to testify or that he was unaware that he had a right to testify. Accordingly, we do not agree that the trial court abused its discretion in denying B.W.'s petition without a hearing, as there do not appear to be substantive grounds for relief on B.W.'s first ineffective assistance of counsel claim. For these reasons, we overrule B.W.'s first assignment of error.

### C. Assignment of Error No. 2

{¶ 22} In his second assignment of error, B.W. argues that he was deprived of the effective assistance of counsel as his counsel did not communicate the import of the pre-trial plea offer, namely that trial counsel did not inform B.W. that an adjudication of delinquency for GSI was expungable while an adjudication for rape is not. B.W. contends that had he known that a GSI delinquency was expungable he would not have rejected the plea offer.

{¶ 23} In *Lafler v. Cooper*, the Supreme Court held that for a defendant to meet the *Strickland* prejudice prong in the context of a rejected plea bargain:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

{¶ 24} We note that the burden is on B.W. to provide "evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel."

*Jackson*, 64 Ohio St.2d 111. If the petition and supporting materials do not demonstrate sufficient operative facts to establish substantive grounds for relief, a trial court may deny the petition without a hearing.

{¶ 25} In an affidavit attached to his petition for postconviction relief, B.W. stated:

> 10. On or about July 1, 2022, [counsel] informed me that the prosecutor was willing to enter into a deal under which (1) the case would be dismissed if I passed a polygraph test, and (2) I would admit to Gross Sexual Imposition if I failed a polygraph test.
>
> 11. [Counsel] recommended that I reject this offer.
>
> 12. [Counsel] did not inform me that an adjudication of delinquency for Gross Sexual Imposition is subject to sealing and expungement and that an adjudication for Rape is not. . . .
>
> 13. If I had known that an adjudication of delinquency for Gross Sexual Imposition is subject to sealing and expungement and that an adjudication for Rape is not, then I would have admitted to Gross Sexual Imposition to avoid the risk, of an adjudication of Rape.

(Mar. 24, 2025 Aff. at 2.)

{¶ 26} In its decision, the trial court cast doubt on the prospect of it accepting the terms of a possible GSI plea, as B.W. consistently asserted that he did not compel or force S.K. to engage in sexual activity. In fact, B.W. stated in his affidavit in support of his postconviction petition, "I did not compel, force, or coerce S[.]K[.] to engage in vaginal intercourse or oral sex on June 1, 2021 – or ever. Everything we did that day was consensual and consistent with our prior sexual activity." *Id.* at 3. R.C. 2907.05(A) defines gross sexual imposition and states, "[n]o person shall have sexual contact with another . . . when any of the following applies: (1) the offender purposely compels the other person . . .to submit by force or threat of force." B.W.'s affidavit therefore stands in direct conflict with what he attests he would have pled guilty to if his counsel had advised him that GSI was expungable. The trial court observed that, in his affidavits, B.W. denied any culpability for his actions on June 1, 2021 and that B.W.'s position was "consistent throughout the pendency of this case." (July 8, 2025 Decision at 11-12.) Yet had he accepted the plea offer and failed a

polygraph, he would have had to admit that he compelled S.K. to have sexual contact with him by force or threat of force under R.C. 2907.05.

{¶ 27} We review a trial court's decision to deny a postconviction relief petition without a hearing for an abuse of discretion. *Hough*, 2021-Ohio-2852, at ¶ 8 (10th Dist.). We afford trial courts broad discretion and deference in judging the credibility of sworn affidavits in the context of postconviction relief proceedings. The Supreme Court of Ohio has stated:

> [A] trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact. To hold otherwise would require a hearing for every postconviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended. "[I]f we would allow any open-ended allegation or conclusory statement concerning competency of counsel without a further showing of prejudice to the defendant to automatically mandate a hearing, division (D) of R.C. 2953.21 would be effectively negated and useless." [*State v.*] *Jackson*, 64 Ohio St.2d at 112, 18 O. O.3d at 351, 413 N.E.2d at 823.

*State v. Calhoun*, 1999-Ohio-102, 86 Ohio St.3d 279, 284.

{¶ 28} In *Calhoun*, the Supreme Court of Ohio also stated that, in determining the credibility of supporting affidavits, a "trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-756 (1st Dist. 1994).

{¶ 29} We do not find an abuse of discretion in the trial court's assessment of the credibility of B.W.'s affidavits. As the trial court noted, B.W. consistently denied any culpability and attested that he did not "compel, force or coerce" S.K., which would have been at odds with the proffered plea deal. We therefore overrule B.W.'s second assignment of error.

## IV. CONCLUSION

{¶ 30} Having overruled both of B.W.'s assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.

––––––––––––